*893 OPINION.
MoRRis:
The first assignment of error is the failure of the respondent to include in invested capital $100,000 for capital stock of the Mead Manufacturing Co. under the facts hereinabove set forth. The petitioner contends that this amount should have been allowed *894 from the date of the original subscription, while the respondent allowed it only from the date of the entry on petitioner’s books charging the personal accounts of its stockholders with the amount of their subscriptions.
Section 326 (a) of the Revenue Act of 1918 provides: “ That as used in this title the term ‘ invested capital ’ for any year means (except as provided in subdivision (b) and (c) of this section) (1) actual cash bona fide paid in for stock or shares; (2) actual cash value of tangible property, other than cash, bona fide paid in for stock or shares, at the time of payment, * * Tangible property referred to in section 326 (a) (2) above is defined in section 325 (a) to mean “stocks, bonds, notes and other evidences of indebtedness, bills and accounts receivable, leaseholds, and property other than intangible property.” As far as the Mead Manufacturing Co. is concerned, the only evidence of cash or other tangible property having been paid in for stock was a credit to it on the books of another corporation of $100,000. It issued no stock, did not engage in the conduct of any business, nor did it need* or use any cash or other property. The petitioner contends, however, that the $100,000 was used in and was at the risk of the consolidated business during this entire period, and that the only reasonable conclusion to be drawn therefrom is that the money was actually paid in for the stock at the time it was subscribed therefor and that the omission of the bookkeeper to execute an order to make an entry on the books has no effect on petitioner’s right to include this sum in invested capital from December 8, 1917, to the close of its taxable year. We are unable to agree with the conclusion drawn from the petitioner’s premise. The only way the amount in controversy could be included in invested capital would be through its conversion from borrowed capital into cash paid into the business. The facts do not support such a conversion. The stockholders’ accounts were not charged with the amounts of the subscriptions until October 28, 1918, and interest was credited on these amounts until that date in accordance with the petitioner’s practice of paying interest on the stockholders’ credit balances. Even after discovery that prior entries were not made, the stockholders’ accounts were not charged back with the interest credited to them from December 8, 1917, to October 28, 1918. The respondent’s determination on this item is therefore approved.
The second assignment of error involving sections 327 and 328 of the Revenue Act of 1918 will be hereinafter discussed.
The third assignment of error relates to the action of the respondent in deducting from its invested capital for the year 1918 the sum of $1,832.74 representing 1917 income tax. It appears that this deduction- was made in accordance with the regulations in force for the *895 period under consideration; therefore, under the provisions of section 1207 of the Bevenue Act of 1926, the action of the respondent must be approved. Appeal of Russel Wheel & Foundry Co., 3 B. T. A. 1168.
The fourth assignment of error is to the effect that the respondent incorrectly computed the petitioner’s invested capital in that the petitioner’s good will had been excluded from said computation. The business of the petitioner was organized as a proprietorship in July, 1895, and was owned by James L. Mead. The proprietorship continued to operate as such until it was incorporated, in January, 1898. During that period the profits were $69,555.21. Mead’s testimony disclosed that these profits were determined without taking into consideration any salary for himself. A fair salary for his services for the period July, 1895, to December 31,1897, would be about $6,250 for the entire period, or $2,500 a year. Deducting this salary, the net jorofit for that period was $63,305.21. However, the business was increasing steadily in worth. Prior to the purchase of the business by the petitioner, a committee was appointed to investigate the advisability of accepting the offer of sale which had been made by Meafi, and, as a result of the report of that committee, the business was purchased, the petitioner paying therefor 994 shares of its capital stock. When the assets were taken over, the petitioner’s books were charged with tangible assets of $24,400 and good will of $75,000. The petitioner’s witness stated that the reason for not entering the entire net assets in the books of account at $27,167.49, their true book value, was that they were desirous of using a “ round figure.” From January, 1908, to November, 1910, the entire good will account of $75,000 was written off the books to profit and loss. In computing the petitioner’s invested capital for the year ended October 31, 1918, the respondent; failed to allow any portion of the good will of the company as invested capital.
We are satisfied from the evidence the company acquired a very substantial good will when it purchased the business of James L. Mead in 1898. This conclusion is borne out by a consideration of the earnings for the period July, 1895, to December 31,1897. We realize, of course, that a period of two and one-half years is an exceedingly short time within which to determine the worth of a going business, but we do not rely entirely upon the test of profits. The committee appointed to investigate and determine the advisability of purchasing the assets in question considered that the established business and good will were abundantly worth the difference between the actual assets and the par value of 994 shares of stock, viz, $72,324.51. We are satisfied that this value is amply supported by the evidence, and should be included in invested capital for the tax *896 able year in question, subject to the limitation on intangibles. See D. N. & E. Walter & Co. v. Commissioner, 10 B. T. A. 620.
Under this assignment of error the petitioner is also claiming additional invested capital through the purchase of good will for cash based on expenditures made for advertising over a series of years and charged to expense. The situation presented on this item is the same as that appearing in the Appeal of Northwestern Yeast Co., 5 B. T. A. 232, in which we recognized that some part of the cost of advertising may be a capital investment which may be included in invested capital, but in the absence of any evidence upon which an allocation can be predicated, no additional invested capital was allowed by reason of such expenditures. As no allocation of the advertising expenses has been made in the instant proceeding, invested capital may not be increased thereby.
=- The fifth assignment of error is the failure of the respondent to allow as a credit against its taxes for the fiscal year ended October 31, 1918, certain taxes paid to Great Britain in 1920 on its income for the fiscal year in question from sources within that country.
.Section 238 of the Revenue Act of 1918 provides as follows:
(a) That in the case of a domestic corporation the total taxes imposed for the taxable year by this title and by Title III shall be credited with the amount of any income, war-profits and excess-profits taxes paid during the taxable year to any foreign country, upon income derived from sources therein, or to any possession of the United States.
If accrued taxes when paid differ from the amounts claimed as credits by the corporation, or if any tax paid is refunded in whole or in part, the corporation shall at once notify the Commissioner who shall redetermine the amount of the taxes due under this title and under Title III for the year or years affected, and the amount of taxes due upon such recletermination, if any, shall be paid by the corporation upon notice and demand by the collector, or the amount of taxes overpaid, if any, shall be credited or refunded to the corporation in accordance with the provisions of section 252. In the ease of such a tax accrued but not paid, the Commissioner as a condition precedent to the allowance of this credit may require the corporation to give a bond with sureties satisfactory to and to be approved by him in such penal sum as he may require, conditioned for the payment by the taxpayer of any amount of taxes found due upon any such redetermination; and the bond herein in-escribed shall contain such further conditions as the Commissioner may require.
Section 200 of the same Act provides that the term “ paid,” for the purpose of the deductions and credits under Title II, means paid or accrued. The petitioner kept its books and made its returns on the accrual basis. The taxes in question were for the fiscal year 1918, and were accrued on its books of account. They were subsequently paid and the evidence shows that no refund thereof has been made. We are therefore of the opinion that the petitioner is entitled to a credit of 482 pounds 14 shillings against its taxes for the year in *897 question at the rates of exchange, as set forth in the findings of fact, prevailing at the date of payment of said tax to Great Britain. Appeal of D. E. Brown, 1 B. T. A. 446.
The sixth assignment of error raises the question whether the petitioner is entitled to an allowance for the exhaustion of a certain leasehold. We have found from a consideration of all the evidence that this lease had a value on March 1, 1913, of $62,800.95. Its life extended to August 31, 1925. The petitioner is therefore entitled to an allowance for the exhaustion thereof for the taxable year in question based on the March 1, 1913, value, and its remaining life from that date. Appeal of Kaufman Straus Co., 2 B. T. A. 718.
Reverting to the second assignment of error, namely that pertaining to the petitioner’s right to have its tax computed under section 328 for the portion of the fiscal year subject to 1918 rates, relief under section 210 of the Revenue Act of 1917 having been waived, the petitioner contends that it comes within the provisions of section 327 in that its invested capital can not be accurately determined and abnormal conditions existed affecting its capital and income. Upon the dissolution of the partnership of Mead and Prentice, Mead turned certain valuable assets into the petitioner without consideration, but no record appears in the books of account regarding the receipt of these assets or the value thereof. The evidence also shows that valuable patents were developed, which were not capitalized. See Appeal of Art Metal Construction Co., 4 B. T. A. 493. The petitioner used in its business a large amount of borrowed capital. Over a period of years it spent over $2,700,000 for advertising which was charged to expense. The petitioner reaped the benefits of whatever good will was built up by this expenditure, but, as we have hereinabove held, may not include the cost thereof in its invested capital. These conditions, in our opinion, clearly bring the petitioner within section 327, and its profits tax should accordingly be computed under section 328 of the Revenue Act of 1918.
This proceeding having been heard prior to the decision of the Supreme Court in Blair v. Oesterlein Machine Co., 275 U. S. 220, the respondent refused to comply with the subpoena to produce certain documents. The petitioner introduced in evidence the deposition of Edward H. Teal, vice president and general manager of Homer P. Snyder Manufacturing Co., which is engaged in the manufacture of bicycles and bicycle parts. His testimony disclosed that that company’s percentage of excess-profits tax to net income for the calendar year 1918 was 4.1 per cent. We do not know what volume of business that company did nor the amount of capital employed. It was not shown whether that company was doing a retail business *898 exclusively, or wholesale, or both, as in the instant case. Sufficient evidence was not introduced for us to determine whether that company is a proper comparative or not; therefore, we can not, as requested by the petitioner, order the respondent to use it as such.

Recomputation of the deficiency should he made under Rule 62 (c).